**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JUSTIN L. JONES, ADC # 150888        *
                                     *
                Plaintiff,           *
                                     *
v.                                   *
                                     *        No. 1:14CV00141-JJV
ROUSE, Grimes Unit; *et al*.         *
                                     *
                Defendants.          *

**MEMORANDUM AND ORDER**

**I.        INTRODUCTION**

Justin L. Jones ("Plaintiff") brought this action alleging Defendant Raylina Ramsey failed to protect him[1] from an assault by another inmate. (Doc. No. 16 at 5-6.) Now, Defendant Ramsey seeks summary judgment on all claims against her (Doc. No. 52) and Plaintiff has responded (Doc. No. 57).

**II.       BACKGROUND**

Plaintiff alleges the Miller County Circuit Court issued a "no-contact" order on October 15, 2012, which was intended to preclude interaction between himself and Troydreikus Lewis. (Doc. No. 16 at 3.) Plaintiff entered the Arkansas Department of Correction ("ADC") on March 11, 2014, and was processed at the Ouachita River Unit. (Doc. No. 6 at 6.)[2] He allegedly informed staff at the Ouachita River Unit of his no contact order with Lewis. (*Id*. at 6-7.) Plaintiff was transferred to the

_____

[1]Plaintiff also previously alleged he was subjected to cruel and unusual punishment and his due process rights were violated. (Doc. No. 16 at 6.) These particular claims were not asserted against Defendant Ramsey, however, and all other Defendants have already been dismissed. (Doc. Nos. 15 & 41.)

[2]The Court looks to Plaintiff's First Amended Complaint only to glean the complete factual background in this case. All claims are governed by his Second Amended Complaint. (Doc. No. 16.)

Grimes Unit on March 17, 2014, and allegedly informed Defendant Ramsey about his no contact order with Lewis on March 18, 2014.  (*Id*. at 7.)  On March 20, 2014, Plaintiff learned  Lewis was incarcerated at the Grimes Unit.  (Doc. No. 16 at 3.)  Defendant Ramsey assigned Plaintiff to the same barracks as Lewis on that day.  (*Id*.)  Shortly thereafter, Plaintiff and Lewis fought in the shower area of the barracks.  (*Id*.)

## III.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).   The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).   The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.    ANALYSIS

Defendant Ramsey argues that: (1) official capacity claims for damages against her are barred

by sovereign immunity; (2) Plaintiff has failed to allege a claim upon which relief may be granted against her; and (3) she is entitled to qualified immunity. I conclude, for the reasons stated hereafter, that her Motion should be granted.

### A.    Official Capacity Claims for Monetary Damages

It is settled law that an official capacity claim for damages against a state or municipal actor is akin to a claim against the state or municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It necessarily follows that official capacity claims for damages against state employees are barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). It is undisputed that Defendant Ramsey was, at all times relevant to this suit, an employee of the ADC. Plaintiff's official capacity claims for damages against her are, therefore, barred by sovereign immunity.

Plaintiff also seeks a declaratory judgment asserting Defendant Ramsey violated his rights under the Eighth Amendment and Arkansas state law. (Doc. No. 16 at 7.) This official capacity claim is not barred by sovereign immunity, but its issuance is still inappropriate. *See Corliss v. O'Brien*, 200 Fed. Appx. 80, 84 (3rd Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct.").

Finally, Plaintiff seeks several forms of injunctive relief which are not barred by sovereign immunity. (Doc. No. 16 at 7-8.)

**B.      Qualified Immunity**[3]

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522,

---

[3]In her brief, Defendant Ramsey raises a separate argument that the weight of evidence does not support a violation of Plaintiff's Eighth Amendment rights. Analysis of that argument overlaps with a discussion of qualified immunity, and the Court elects to evaluate immunity first because "Qualified immunity is immunity from suit rather than a mere defense to liability, and therefore, immunity issues should be resolved at the earliest possible stage of the litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[4]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

528 (8th Cir. 2009).

A failure to protect claim is composed of two elements.  First, the inmate must demonstrate his conditions of incarceration posed a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, the inmate must demonstrate the defendant prison official knew of and disregarded the risk to his safety.  *Id*. at 837.  The second prong requires a finding that the defendant was deliberately indifferent.  *See Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference' to inmate health or safety.")  I find  neither prong is satisfied.

First, I conclude Plaintiff was not subjected to a substantial risk of serious harm.  Giving full credit to Plaintiff's allegations, the information he provided to Defendant Ramsey failed to suggest his contact with Mr. Lewis could amount to a substantial risk.  Mr. Jones reported a no contact order was issued by the trial court.  The order required Mr. Jones to have no contact with Mr. Lewis because Mr. Lewis had been victimized by Mr. Jones.  Nothing in the issuance of this order suggests Mr. Lewis was a threat to Mr. Jones.  And Mr. Jones has not alleged he explained to Ms. Ramsey how Mr. Lewis was a threat to him.

Second, Plaintiff declined to report the incident after it happened and prison staff did not learn of it until two days later, on March 22, 2014.  (Doc. No. 52-2 ¶ 5.)  It is not logical that Mr. Lewis was a substantial threat to Plaintiff, yet he failed to report the altercation and existence of this continued threat.  Plaintiff has also not alleged  he and Lewis had any other altercations or incidents during the two days they remained housed together.  So Plaintiff's failure to seek help from prison staff after the fight shows Mr. Lewis was not a substantial risk to Plaintiff's safety.

Even if Plaintiff was able to meet the substantial risk element, I find Defendant Ramsey did not act with deliberate indifference.  Deliberate indifference is akin to criminal recklessness.  *See*

*Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).  Plaintiff provided only Ms. Ramsey word of the existence of the no contact order.  He never reported he had enemies at the Grimes Unit  (*Id*. ¶ 9-10), and never asked for protective custody.  Plaintiff also never asked  to have Lewis put on his enemy alert list, or expressed any specific concerns about his safety.

At best, Defendant Ramsey *may* have been negligent.  Even Plaintiff describes Defendant Ramsey's conduct as negligent.  (Doc. 52-1, p. 11.)  While he later says she was "grossly negligent," during his deposition, Mr. Jones explained:

> I don't believe she did it on purpose.  Probably she got sidetracked when we was [*sic*] talking about where she was from, because she like - - at the end - - at the end, at the end of our little interview, she was like she was going to make sure that we wasn't [*sic*] housed around each other. . . .  I felt like she just really neglected the situation by not taking - - you know what I'm saying - - the initiative to find out where he was at [*sic*] before they housed me and sent me somewhere.

(Doc. No. 52-9 at 8-9.)

Negligence is neither equivalent to deliberate indifference nor actionable under section 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).  Based on the foregoing, I find Defendant Ramsey did not act with deliberate indifference and she is entitled to qualified immunity.

## V.    CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.     Defendant Raylina Ramsey's Motion for Summary Judgment (Doc. No. 52) is GRANTED.

2.     Plaintiff's claims against Defendant Ramsey are DISMISSED with prejudice.

3.     Plaintiff's Motion to Appoint Counsel and to Extend Time (Doc. No. 56) is DENIED as moot.

IT IS SO ORDERED this 23rd day of February, 2016.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE